Entered: June 24th, 2025
Signed: June 24th, 2025

**SO ORDERED**



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Herman Lee Spivey, | * | 24-16652-MMH |
| | * | |
| Debtor. | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ORDER RESOLVING PENDING MATTERS

Chapter 13 of the Bankruptcy Code[1] helps individual debtors rehabilitate their financial affairs; implement (with court approval) a repayment plan for all their creditors; and if all requirements are satisfied, obtain a fresh financial start. There are, however, limitations to what a chapter 13 bankruptcy case—and in turn the bankruptcy court—can do. These limitations, for example, preclude the bankruptcy court from approving a modification to a prepetition loan secured only by the debtor's principal residence without the consent of the lender. Likewise, the Code and the bankruptcy court generally respect to the greatest extent possible applicable state law, particularly concerning the rights of secured creditors, and the Code provides these creditors certain rights regarding the automatic stay of section 362(a) of the Code. In addition, and irrespective of the chapter of the case, the bankruptcy court is bound by, and must follow, the doctrine of res judicata, which protects parties from relitigating issues that were or could have been resolved in the context of a prior court order.

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

The Court must confront each of these limitations in this case with respect to the pending matters. The Court notes that it takes no joy in resolving the pending matters under these limitations, as the primary property at issue is the debtor's principal residence. The Court has no choice, however, and must grant certain of the relief from stay requested by two of the secured creditors in this case. In addition, for the reasons set forth below, the Court also will deny confirmation of the debtor's proposed plan without leave to amend and, as a result, will deny the motion to dismiss this case without prejudice.

## I.      Relevant Background

Mr. Herman Lee Spivey, the above-captioned debtor (the "Debtor"), filed this chapter 13 case on August 7, 2024. This is the Debtor's third chapter 13 case since 2019. All of his cases have, for the most (if not exclusive) part revolved around a dispute with the mortgage lender on property commonly known as 10123 Frost Way, Ellicott City, Maryland (the "Frost Way Property"). The Frost Way Property is the Debtor's principal residence. The Debtor has been trying to resolve issues surrounding this property and the related loan since at least 2008.

The Debtor also owns certain other real property used primarily for investment purposes. The Debtor's bankruptcy cases have affected these properties as well. This Order addresses one of these properties commonly known as 1901 E. 32nd Street, Baltimore, MD 21218 (the "1901 Property"). The Court describes the general background on the Frost Way Property and the 1901 Property before turning to the procedural history in this case.

### A.      The Frost Way Property

Blue Castle (Cayman) LTD ("Blue Castle") asserts a claim against the Debtor based on the loan secured by the Frost Way Property. Claim No. 4. Specifically, Blue Castle is the holder of a Note dated January 13, 1999, in the original amount of $301,954.50 (the "Frost Way Note") and a related Deed of Trust, executed by the Debtor and Merle C. Spivey (the "Co-Debtor"). The Frost

Way Note matured in July 2015. BSI Financial Services, Inc. ("BSI") is the current servicer on the Frost Way Note.[2]

The Co-Debtor filed a bankruptcy case in 2015, which affected the repayment of the Frost Way Note. Case No. 15-26692. It is undisputed that, during this period (in May 2016), Bank of America offered the Debtor and the Co-Debtor a trial loan modification agreement. The Debtor and the Co-Debtor made the first two trial loan modification payments to Bank of America (the holder of the Frost Way Note at the time) in June and July 2016. They made the third trial loan modification payment to BSI. Bank of America transferred the loan to BSI in August 2016, before the third trial loan modification payment was made.[3]

Under the trial loan modification document, the Debtor and the Co-Debtor could accept the trial loan modification offer by making the three trial loan payments. If all three loan payments were made, the document states, "your mortgage will be permanently modified." Trial Loan Mod. at p. 2, ECF 83-7. That statement does not explain the terms of any permanent loan modification. To that end, that same loan document explains in a subsequent page, that the payments would be

---

[2] BSI also served as servicer on the Note for a brief period earlier in the life of the Note. Tr., ECF 84 at pp. 16; 92–96.

[3] The documents relating to the transfer thus are also relevant. That document states, in relevant part,

> What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?
> - The loan assistance programs that are offered by BSI Financial Services are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, BSI Financial Services has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A.
> - We will transfer any supporting documentation you may have submitted to us to BSI Financial Services. We encourage you to work with BSI Financial Services to complete the process and determine which programs may best suit your current situation.
> - You should continue to make your payments to Bank of America, N.A. through August 15, 2016. On or after August 16, 2016, your payments should be made to BSI Financial Services unless you are provided additional direction.
> - If your loan is pending a decision regarding qualification for these programs, that decision will now be made by BSI Financial Services.

ECF 30-1, p. 5 (Debtor's exhibit in support of response to Blue Castle Stay Motion).

based on "31.000% of gross income" and that the "final modified interest rate may be different."
*See* Trial Loan Mod., Frequently Asked Questions, ECF 30-1.[4]

After making the third trial loan modification payment, the Debtor and the Co-Debtor continued making those payments, but a permanent loan modification was not offered until 2017 (the "Permanent Offer"). The Permanent Offer would have set the monthly payments at $2,300.37, with an adjustable interest rate starting at 2% for the first five years, 3% in the sixth year, and then 3.625% for years 7-39. Case No. 21-10064, ECF 69-2.[5] The Co-Debtor filed a Second Motion for Authority to Incur Secured Debt for the Purpose of Modifying Terms of an Existing Secured Loan for Real Property in the 2015 case in May 2017. That motion described the terms of a loan modification that appear different from the Bank of America trial loan modification but generally consistent with the Permanent Offer. Case No. 15-26692, ECF 143.

The Court approved the Co-Debtor's motion, authorizing the Co-Debtor to enter into the Permanent Offer. *Id*. at ECF 150. The lender and servicer on the Frost Way Property loan at that time then filed a Motion to Vacate Order Authorizing Loan Modification in August 2017, indicating that the Co-Debtor had failed to execute and return the Permanent Offer. *Id.* at ECF 173. The Co-Debtor's counsel in that case then filed an opposition to the lender's motion in September 2017, attaching a copy of the Permanent Offer. *Id.* at ECF 175, 175-1. That opposition stated that the Co-Debtor refused to sign the loan modification "because 'it is not the same as the agreement as the one with Bank of America.'" *Id.* at ECF 175.[6]

---

[4] *See id.* at p. 11. Although parts of these documents were again submitted by the Debtor for the continued hearing on Blue Castle's Stay Motion, the Debtor did not include certain pages previously submitted. Several of these pages were discussed at the previous hearing on Blue Castle's Stay Motion on December 18, 2024. Dec. 18, 2024, Hrg. Rec. at 1:28–1:30; 1:42:30–1:43:30. This document *in its entirety* also was attached to the Co-Debtor's opposition to the Motion to Vacate in Case No. 15-26692, ECF 175-2.

[5] This document also was attached to the Co-Debtor's opposition to the Motion to Vacate in Case No. 15-26692, ECF 175-1. The terms also appear generally consistent with the terms described in the Co-Debtor's Second Motion for authority to Incur Secured Debt, attached to the Debtor's exhibits in this case as ECF 83-6, pp. 2–3.

[6] The papers filed in the 2015 Case show that the Permanent Offer was still being discussed in August and September 2017, months after the initial correspondence from BSI in February 2017, which the Debtor discussed at both the

As explained further below, the parties previously litigated issues concerning the Frost Way Note and the Permanent Offer in this Court. The Debtor nevertheless continues to assert that he accepted the terms of a permanent loan modification offered by Bank of America, which he believes is binding on BSI and in turn Blue Castle.

B.     The 1901 Property

U.S. Bank, National Association, as legal Title Trustee for Truman 2016 SC6 Title Trust (U.S. Bank), filed a proof of claim for amounts due and owing under a loan (the "1901 Note") secured by the 1901 Property. Claim No. 2. The 1901 Note matured in 2013, and the Debtor is in default under that note. The Debtor does not live at the 1901 Property. The Debtor contests the calculation of various fees, charges, and costs under the 1901 Note.

C.     The Procedural History

Blue Castle and U.S. Bank each have filed motions for relief from the automatic stay, requesting not only termination of the stay as to the Frost Way Property and the 1901 Property, respectively, under sections 362(d)(1) and (2) of the Code, but also *in rem* relief against those properties under section 362(d)(4) of the Code. ECF 25, 32.[7] U.S. Bank also filed a motion to dismiss this chapter 13 case (the "Motion to Dismiss" and collectively with the Stay Motions, the "Pending Motions"). ECF 73. The Debtor filed opposition papers as to the Pending Motions and has filed a proposed chapter 13 plan. ECF 21, 30, 35, 37, 42, 75, 78, 83.[8]

_____

hearing held on May 21, 2025, and the hearing held in Case No. 21-10064 on June 23, 2022. Tr., Case No. 21-10064, ECF 102.

[7] Motion for Relief from Automatic Stay and Co-Debtor Automatic Stay Pursuant to 11 U.S.C. § 1301(c)(3) and for Prospective Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(4), ECF 25; Motion for Relief from Automatic Stay and Co-Debtor Stay Pursuant to § 1301(c) and Imposition of an Equitable Servitude for One Year, ECF 32 (together, the "Stay Motions"). The Chapter 13 Trustee, Blue Castle and U.S. Bank also filed responsive papers and support documents. ECF 36, 38, 72, 81.

[8] Blue Castle's Stay Motion was filed on September 25, 2024. ECF 25. The Court held a first hearing on October 31, 2024, after which it entered an order continuing the hearing and directing the Debtor to make adequate protection payments, among other things. ECF 33. The Court held a second hearing on December 18, 2024, after which, it entered an order directing further adequate protection payments and requesting the parties' positions regarding mediation. ECF 43. The Debtor and Blue Castle filed lines indicating their consent to mediation, and the Court, thus, assigned

The Debtor's proposed chapter 13 plan states that the Debtor will pay a total of $72,000 to creditors during the five-year term of the plan. It also lists the amounts of the Blue Castle and U.S. Bank claims at $180,000 and $138,000, respectively. Those amounts are significantly lower than the amounts asserted against the Debtor by each creditor in their proofs of claim.[9] Blue Castle and U.S. Bank have objected to the Debtor's proposed chapter 13 plan on that and other grounds. ECF 23, 26.

The Court held an evidentiary hearing on the Pending Motions and the chapter 13 plan on May 21, 2025 (the "Hearing").[10] At the Hearing, the Debtor and counsel to Blue Castle and U.S. Bank appeared and presented evidence in support of their papers, arguments, and positions.

In addition, the Chapter 13 Trustee's counsel appeared and stated that the proposed chapter 13 plan was significantly underfunded. From the Chapter 13 Trustee's perspective, any proposed plan in this case would need to address approximately $786,770 in secured claim arrears, but the Debtor is proposing only $72,000 in payments under the proposed plan. Tr., ECF 84 at pp. 85–86.[11] She further stated that the Chapter 13 Trustee did not believe the Debtor could propose a feasible plan given his assets and the amount of his liabilities.

The Court has carefully reviewed all the relevant papers and evidence, and these matters are now ripe for resolution.[12]

---

Blue Castle's Stay Motion to mediation. ECF 46, 47, 49. The mediator filed a Report on Nonresolution of Disputes, after which, the Court set the May 21, 20252, hearing to resolve the Pending Motions. ECF 62, 66.

[9] U.S. Bank filed Claim No. 4 relating to the 1901 Property in the total amount of $158,381.22. Blue Castle filed Claim No. 4 in the amount of 4481,821.95. Under 11 U.S.C. § 502, these claims, which were "filed under section 501" are "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a).

[10] As noted above, the Hearing was a continued hearing on Blue Castle's Stay Motion. Both Blue Castle and the Debtor submitted documents to the Court in connection with those previous hearings. U.S. Bank's Stay Motion was also previously set for Hearing in this case but continued.

[11] The Chapter 13 Trustee's counsel also noted that even based on the Debtor's testimony, the most he could contribute to the proposed plan at this time would be $117,900, still significantly below the required funding under the Code. *Id.*

[12] The United States District Court for the District of Maryland has referred the chapter 13 case to this Court under 28 U.S.C. § 157(a) and Local Rule 402 of the District Court. This Order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable to these matters by Bankruptcy Rules 7052 and 9014. The Court details herein its factual findings necessary to resolve the disputed legal issues. *See, e.g.*, *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

## II.      Findings of Fact

Most of the facts needed to resolve the Pending Motions and the confirmation of the proposed chapter 13 plan are evident from the official dockets in this case and the Debtor's and the Co-Debtor's prior bankruptcy cases.[13]

A total of seven bankruptcy cases have been filed affecting the Frost Way Property and several that have affected the 1901 Property:[14]

- The first case was a chapter 7 case filed by Herman Lee Spivey on May 19, 2011, and assigned case number 11-20512 ("First Case"). In the First Case, a chapter 7 discharge was issued on September 12, 2011, and the case was subsequently closed on February 5, 2013.

- The second case was a chapter 13 case filed by Sterling A. Spivey[15] on January 28, 2015, and assigned case number 15-11199 ("Second Case"). The Second Case was dismissed on March 13, 2015.

- The third case was a chapter 13 case filed by Merle C. Spivey on December 1, 2015, and assigned case number 15-26692 (the "2015 Case" or "Third Case"). The Third Case was dismissed on October 10, 2017.[16]

- The fourth case was a chapter 13 case filed by Sterling A. Spivey on June 18, 2015, and assigned case number 15-18679 ("Fourth Case"). The Fourth Case was dismissed on September 15, 2015.

- The fifth case was a chapter 13 case filed by Herman Spivey on April 3, 2019, and assigned case number 19-14500 ("Fifth Case"). The Fifth Case was dismissed on June 26, 2020.

- The sixth case was a chapter 13 case filed by Herman Lee Spivey on January 6, 2021, and assigned case number 21-10064 (the "2021 Case" or "Sixth Case"). The Sixth Case was dismissed on April 24, 2024.

- The Debtor filed this seventh case on August 7, 2024.

---

[13] The Court has reviewed the documents submitted by the parties. Many of the documents are submitted by both parties or are duplicative of documents offered and accepted into evidence in previous cases. In addition, the documents bear the hallmarks of purporting to be as represented by the offering party and are helpful to the resolution of this matter. *See* Fed. R. Evid. 104, 401, 402, 803, 902. *See also* Wright & Miller, Federal Practice and Procedure § 2473 (3d ed. 2025) ("Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time....") (quoting *Noonan v. Caledonia Gold Mining Co.*, 121 U.S. 393, 400 (1887)).

[14] According to U.S. Bank's motion, the Third, Fifth, Sixth, and Seventh Cases affected the 1901 Property. ECF 32, at pp. 2–3.

[15] Because Sterling Spivey was on the Deed of Trust at the time of his bankruptcies, the automatic stay in his cases applied to the Frost Way Property. *See* Deed of Trust, Claim No. 4, pp. 13–18.

[16] Prior to the conversion of the 2015 Case, Merle C. Spivey received a chapter 7 discharge on April 13, 2016, which was not vacated prior to or after conversion. Case No. 15-26692, ECF 51.

In the 2021 Case, the Debtor filed an objection to Blue Castle's proof of claim. Case No. 21-10064, ECF 32. The Court held an evidentiary hearing on the claim objection on November 8, 2021. The parties each presented their respective positions on the validity of Blue Castle's claim, which included facts and circumstances surrounding the Bank of America trial loan modification and the subsequent Permanent Offer and the 2015 Case. Case No. 21-10064, ECF 69, 70, 71, 72, 73. The Court requested post-hearing briefing from the parties. *Id.* at ECF 77, 78, 82, 83. The Court ultimately overruled the Debtor's objection to Blue Castle's claim. *Id.* at ECF 88.

The Court's findings of fact in the 2021 Case claims objection litigation considered the same kinds of evidence presented at the Hearing (and at prior related hearings). *Id.* at ECF 88, pp. 5–8 (the "2022 Order"). In the 2021 Case, the parties introduced evidence concerning, among other things, the original Bank of America trial loan modification, the Bank of America transfer of the Frost Way Note to BSI, the Debtor's communications with BSI concerning a loan modification in February 2017, the Co-Debtor's request for the Court to authorize her to enter into a permanent modification in the 2015 Case, and the Debtor's and Co-Debtor's rejection of the Permanent Offer in connection with the 2015 Case.[17]

---

[17] More specifically, the Court notes that the foregoing documents (including the Bank of America trial loan document, the notice of transfer, and the documents referenced in the 2015 Case) were offered and accepted into evidence during the Debtor's prior bankruptcy case and reviewed by the Court before entering the 2022 Order. Case No. 21-10064, ECF 69 (which incorporates ECF 38), 70 (which incorporates ECF 38 and 45), 71. In addition, the Fay Servicing Letter and copies of the trial loan modification payment checks were offered and accepted into evidence during the Debtor's prior bankruptcy case and reviewed by the Court before entering the 2022 Order. *Id.* at ECF 38, 45. The Debtor also testified concerning the February 2017 loan modification offer from BSI and the timing of that offer. For example, in the 2021 Case, the Debtor testified,

19 Q And did there come a time when you got, you received
20 documents from -- received a document offering you a permanent
21 modification?
22 A Yes, I received a document.
23 Q And that document we looked at today (inaudible) when did
24 you get that document?
25 A I got that document on February the 27th of 2017.
***
1 Q Okay, when you were talking to BSI or Fay Servicing, did
2 they ever give you a deadline to return the more permanent
3 modification?

In addition, the Court notes that based on the evidence offered at the Hearing, none of the previous bankruptcy cases resolved, or made significant payments toward, the claims of Blue Castle and U.S. Bank. *See generally* ECF 25, 32, 72, 81, 83. The Frost Way Note and the 1901 Note remain outstanding and in default. Even focusing solely on the Co-Debtor's 2015 Case and then the Debtor's subsequent three cases, these bankruptcy cases in each instance delayed Blue Castle and U.S. Bank from being able to collect on their respective claims. The automatic stay applied to the Frost Way Property and the 1901 Property in each case. None of those cases resulted in a completed chapter 13 plan or any meaningful payments to the creditors. And counsel for U.S. Bank noted that three of those four bankruptcy cases were filed on the eve of a state law foreclosure action affecting the 1901 Property. Tr., ECF 84 at pp. 80–81.

## III.   <u>Conclusions of Law</u>

In any bankruptcy case, it is important to ensure that the debtor (and all parties in interest) have had a fair and meaningful opportunity to present their issues to the Court. Although that process can be frustrating at times for parties—particularly when the bankruptcy case interrupts or precludes nonbankruptcy litigation—the bankruptcy system is one built on, among other things, notice, due process, and opportunity for hearings before the Court.

---

4 A They didn't give me a -- they said they was working on it.
5 And --
6 Q Did anyone ever give you a three day deadline to return
7 the documents?
8 A Oh yes, when BSI gave it to me in the last of February,
9 they gave me a -- about three days turnaround to get the
10 document back to them.
11 Q Okay. And you understood that from correspondence or from
12 a telephone?
13 A I understood that from base it from the, when they sent
14 the paper to me, you know, that that's what they instruct.
*Id.* at ECF 76, at 28, 32.

The bankruptcy system is not designed, however, to delay resolutions or provide repeat opportunities to relitigate previously decided matters, whether decided in state or federal court. As the United States Supreme Court has stated,

> It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has had his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined.

*Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938).

In this case, the Debtor has had ample opportunity to confirm and complete a chapter 13 plan. The Court has tried to provide time to permit the Debtor to work with his creditors and find a path forward. The Court cannot, however, force the Debtor's creditors to accept less than what they are entitled to receive under the Code and their prepetition contracts. And particularly with respect to the Frost Way Property, which is the Debtor's principal residence, the Court cannot change the terms of the parties' agreements or its prior ruling on the objection to Blue Castle's claim in the 2021 Case.

The United States Court of Appeals for the Fourth Circuit has explained that "the doctrine of res judicata encompasses two concepts: (1) claim preclusion and (2) issue preclusion." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (citing *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)). Claim preclusion[18] focuses on the claims (i.e., causes of action) pursued in the previous litigation, while issue preclusion[19] speaks to the legal and factual

---

[18] In general, a party must establish the following elements for claim preclusion:
(1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties are identical, or in privity, in the two actions; and (3) the claim[ ] in the second matter [is] based upon the same cause of action involved in the earlier proceeding.
*Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003).

[19] In general, a party must establish the following elements for issue preclusion:
(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

issues actually litigated and decided by the court. *Id.* Claim preclusion generally "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Moreover, the issues decided in previous litigation may carry over to subsequent litigation between the parties, barring relitigation of those issues in the context of the same claim (i.e., direct estoppel) or a different claim (i.e., collateral estoppel). *See, e.g., Restatement (Second) of Judgments* § 13, cmt (g) (1982).

Although the concepts of claim and issue preclusion are closely related, the standard for evaluating their application differs in certain key respects. For example, the Fourth Circuit has observed that "while issue preclusion applies only when an issue has been actually litigated, claim preclusion requires only a valid and final judgment." *Orca Yachts*, 287 F.3d at 318. (citing *Restatement (Second) of Judgments* §§ 17, 27 (1980)). *See also Cannon v. Wells Fargo Bank, N.A.*, 2014 WL 672687, at *13 (D. Md. Feb. 20, 2014) ("'Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable.'" (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 569 (3d Cir. 1991))).

The doctrines of claim and issue preclusion resolve most of the issues presented by the Pending Motions. The defenses raised by the Debtor to the Blue Castle Stay Motion were or could have been litigated in the 2021 Case. In fact, as noted above, the Court considered similar, if not identical, issues, arguments, and evidence in resolving the Debtor's objection to Blue Castle's claim in that case. Case No. 21-10064 at ECF 88. Moreover, the Court's 2022 Order was not appealed by either party and is a final, nonappealable order. *Id.* at ECF 88, 90, 92.

The Debtor commented several times that the Court did not have the information necessary to resolve the claims objection in the 2021 Case. The Debtor continues to believe that the 2016

---

*S.E.C. v. Resnick*, 604 F.Supp.2d 773, 778 (D. Md. 2009).

trial loan modification automatically flipped to a permanent loan modification and that the subsequent holder of the Frost Way Note could not alter those terms in any way. The Court acknowledges that the Debtor is firm in his belief, but that belief does not accord with the language of the parties' documents, which the Court is required to follow. Moreover, all the issues and documents identified by the Debtor at the Hearing either were or could have been addressed in the 2021 Case.[20] The Court thus has no basis or ability to vacate or reconsider its order on the Debtor's objection to Blue Castle's claim in the 2021 Case.

In addition, given the multiple bankruptcy cases filed by the Debtor and the Co-Debtor affecting the Frost Way Property and the 1901 Property, the Court is bound by the language of section 362(d)(4) of the Code. That section provides for the imposition of *in rem* relief against property if, among other things, a debtor's multiple bankruptcy filings affecting such property "w[ere] part of a scheme to delay, hinder, *or* defraud creditors." 11 U.S.C. § 362(d)(4) (emphasis added).[21] In addition, courts in this district have long recognized, even subsequent to the enactment of section 362(d)(4),[22] that "creditors have the option to request, in addition to relief from the automatic stay under Section 362(d), the imposition of an equitable servitude on property in which a debtor has an interest upon showing that the debtor, with others having interest in the property, is: (1) a serial bankruptcy filer (2) whose filings constitute a continuing abuse of the bankruptcy

---

[20] *See, e.g.,* Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; *see also Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010) (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)).

[21] "As amended in 2010, '[s]ection 362(d)(4) is disjunctive, thus, "the court need not inquire into fraud if it finds there was hindrance or delay to the Movant."'" *In re Kearns*, 616 B.R. 458, 467 (Bankr. W.D.N.Y. 2020) (citations omitted).

[22] As Judge Derby explained in *Muhaimin*,

> BAPCPA § 362(d)(4) is not inconsistent with the *Yimam* doctrine. The findings necessary to grant or deny relief under one would not foreclose relief under the other. There is nothing in the specific language of BAPCPA § 362(d)(4) that would suggest Congress intended to foreclose alternate, parallel relief under a judicial doctrine such as *Yimam* that addresses the futility of repeated Chapter 13 filings by particular debtors. Consequently, relief under *Yimam* is not superseded by BAPCPA § 362(d)(4), but rather survives and co-exists *in pari materia* with it, as an alternative remedy available to creditors dealing with serial bankruptcy filers.

*In re Abdul Muhaimin*, 343 B.R. 159, 173 (Bankr. D. Md. 2006); *see also In re Hemsley*, No. 06-11684PM, 2006 WL 4748143, at *1 (Bankr. D. Md. May 31, 2006).

process." *In re Abdul Muhaimin*, 343 B.R. 159 (Bankr. D. Md. 2006) (citing *In re Yimam*, 214 B.R. 463 (Bankr. D. Md. 1997)).

Here, the Court's dockets show multiple bankruptcy cases filed primarily to stop action by creditors with interests in the Frost Way Property and the 1901 Property. Indeed, those creditors have been delayed since, at least, 2015 in their efforts to exercise their state law rights under the Frost Way Note and the 1901 Note. The Debtor has not been able to address those claims in his several prior bankruptcy cases, and as discussed above, there is no evidence before the Court that he can do so now. Blue Castle and U.S. Bank are entitled to relief from stay and the *in rem* relief with respect to the Frost Way Property and the 1901 Property, respectively.

Finally, the Court notes that the Debtor presented no evidence that he can fully fund and complete a chapter 13 plan. 11 U.S.C. § 1325.[23] The Court agrees with the Chapter 13 Trustee's statements at the Hearing. Moreover, the Court notes that the Debtor had an opportunity to perform under and complete a chapter 13 plan in the 2021 Case, and he failed to do so. The Court will deny confirmation of the Debtor's proposed chapter 13 plan without leave to amend.[24]

Accordingly, for the reasons set forth herein and on the record of the Hearing, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that Blue Castle's Motion for Relief from Stay [ECF 25] is granted; Blue Castle is granted relief from the automatic stay of section 362(a) to pursue its state law rights with respect to the Frost Way Property and is granted *in rem* relief under section 362(d)(4) of the Code

---

[23] The Debtor bears the burden of proof to establish that his plan meets the requirements of the Code by a preponderance of the evidence. *See, e.g., In re Ready*, 545 B.R. 501, 505 (Bankr. M.D.N.C. 2015) (explaining that "the burden of proof then shifts to the Debtor to show, by a preponderance of the evidence, that she proposed her current Chapter 13 plan in good faith"); *In re Simms*, No. 10-22579, 2011 WL 2604801, at *5 (Bankr. D. Md. June 30, 2011) (explaining that the "Debtor will bear the burden of proof as a debtor does for all elements required to be demonstrated for confirmation of a plan") (citing cases on point).
[24] As a result, the Court will deny the Motion to Dismiss without prejudice.

13

against the Frost Way Property for a period of 360 days from the date of entry of this Order; and

it is further

ORDERED, that U.S. Bank's Motion for Relief from Stay [ECF 32] is granted; U.S. Bank

is granted relief from the automatic stay of section 362(a) to pursue its state law rights with respect

to the 1901 Property and is granted *in rem* relief under section 362(d)(4) of the Code against the

1901 Property for a period of 360 days from the date of entry of this Order; and it is further

ORDERED, that by separate Order, the Court will deny confirmation of the Debtor's

proposed plan [ECF 21] without leave to amend; and it is further

ORDERED, that the Motion to Dismiss [ECF 73] is denied without prejudice; and it is

further

ORDERED, that nothing in this Order affects whatever rights and remedies the Debtor

and the creditors might have under applicable nonbankruptcy law.


cc (by mail and email):
Debtor
Blue Castle's Counsel
U.S. Bank's Counsel
Chapter 13 Trustee
All Creditors

**END OF ORDER**